UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES MATTHEW WHORTON,<br>    Plaintiff,<br>v.<br><br>JODI DEANGELO,<br><br>    Defendant.<br>_____/ | Case No.  21-11046<br><br>Denise Page Hood<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S REQUESTS FOR
RESTRAINING ORDER (ECF No. 8, 11, 18)**

**I.    PROCEDURAL HISTORY**

Plaintiff James Matthew Whorton commenced the instant action on April 22, 2021, without the assistance of counsel.  (ECF No. 1).  Plaintiff filed three separate requests[1] for restraining orders on June 11, 2021 (ECF No. 8) (the "June 11, 2021 Request"), June 22, 2021 (ECF No. 11) (the "June 22, 2021 Request"), and August 16, 2021 (ECF No. 18) (the "August 16, 2021 Request") (collectively, the "Requests") respectively.  On September 7, 2021, Defendant filed her response in

---

[1] Plaintiff's Requests were submitted in the form of a request or letter instead of as a motion.  Plaintiff is reminded request for such relief must be submitted in the form of a motion pursuant to Local Rule 7.1.  The Court will treat Plaintiff's requests and letters as motions in the current instance.  Going forward, if Plaintiff fails to file the appropriate motion for a restraining order in accordance with Local Rule 7.1 the filing will be stricken.

opposition to Plaintiff's August 16, 2021 request for a restraining order. (ECF No. 19). This matter was referred to the undersigned for all pretrial proceedings. (ECF No. 10).

For the reasons discussed below, the undersigned recommends that Plaintiff's Requests (ECF Nos. 8, 11, 18) against Defendant be **DENIED**.

## II.    COMPLAINT ALLEGATIONS

On April 22, 2021, Plaintiff filed a complaint containing numerous allegations including violation of Plaintiff's First and Eighth Amendment rights. (ECF No. 1). According to the complaint, Plaintiff maintains his rights were violated when he suffered various forms of retaliation and harassment due to the grievance complaints he filed regarding his incarceration while housed at the Michigan Department of Corrections ("MDOC") Woodland Center Correctional facility ("WCC"). (*Id.* at PageID.4-5). The alleged retaliatory actions have taken place over the course of Plaintiff's incarceration. (*Id.* at PageID.5).

Specifically, Plaintiff alleges that from September 2019 to November 2019, in retaliation for previously filed grievances, he allegedly suffered various forms of retaliation and harassment including, but not limited to, removal of his suicide prevention blanket and mattress at different points, unnecessary use of steel restraints and an extreme restraint system, and unjustified revisions to his

2

management plan.² Plaintiff alleges as a result of Defendant's harassment and retaliatory actions he has suffered, and continues to suffer, a range of "extreme mental anguish and emotional distress as well as severe and increasing degrees of physical and emotional pain . . . ." (*Id.* at PageID.10).

Plaintiff submitted three requests for restraining orders asking the Court to (i) direct that he be transferred from WCC to another facility "away from my [D]efendant to protect Plaintiff [f]rom [f]urther retaliation" (ECF No. 8, PageID.74); (ii) issue a restraining order against Defendant as she has directed the guards not to allow Plaintiff to "interact or even talk to other inmates" (ECF No. 11, PageID.82-83); and (iii) grant a general restraining order (ECF No. 18, PageID.237).

---

² In September 2019, Dr. Patel "psyche" [sic] ordered Plaintiff should receive a precaution blanket but Defendant removed the blanket for no "justifiable reason" and had the Mental Health department revise Plaintiff's management plan to reflect that he could not have a blanket. (ECF No. 1, PageID.7). A few weeks later, during a stay at St. Joseph Hospital for surgery, Plaintiff was forced to remain in "extreme restraint system (referred to 'Black Box')," which is placed over an individual's handcuffs, for five days. (*Id.*). Following his release from the restraints, his wrist and hands were swollen, and his wrist had several cuts and bruises. (*Id.* at PageID.7-8).
    In October 2019, he was placed "on top of bed restraints for self-harm in an air-conditioned room" without a suicide precaution blanket although inmates on this type of precaution are typically provided one. (*Id.* at PageID.6). Further, during the same month, Defendant took Plaintiff's mattress and he was forced to sleep on the floor for a period of ten days. (*Id.* at PageID.9). He was also placed in "mitts" which prevented him from being able to pick up anything. (*Id.*). Later that month, although Plaintiff's psychiatrist removed him from the restraints, Defendant refused to sign his management plan and had him placed back in restraints despite Plaintiff having committed no wrongdoing. (*Id.*).
    In November 2019, Plaintiff was escorted in steel restraints for all out of cell movement without reason or justification. (*Id.* at PageID.8).

### III. ANALYSIS AND RECOMMENDATIONS

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In determining whether to grant or deny a preliminary injunction, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). Although no single factor is controlling when determining whether a preliminary injunction should be issued, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."). The same standard applies to a motion for a temporary restraining order as to a motion for preliminary injunction. *W. Michigan Family Homes LLC v. United States Dep't of Agric.*, 2013 WL 12109437, at *1 (W.D. Mich. Nov. 26, 2013), *citing Summit*

*County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004).

Plaintiff bears the burden of demonstrating his entitlement to injunctive relief which is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *see also McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy."). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001)). A plaintiff must always, however, show irreparable harm before a preliminary injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

A. <u>Plaintiff's Requests Fail to Address the Necessary Factors</u>

In Plaintiff's June 11, 2021 Request, he asks the Court to issue a restraining order that he be transferred from WCC to another facility "away from my [D]efendant to protect Plaintiff [f]rom [f]urther retaliation." (ECF No. 8, PageID.74). Plaintiff asserts he requested Defendant remove him from the assigned cell at the time of his submission because it was outfitted with continuous video surveillance. (*Id.* at PageID.73). He maintains Defendant responded "'I'm not moving you out a camera cell. You're a sexual deviant, and obsessive masterbator [sic]. I'm keeping you in a camera cell so I can catch you masterbating [sic]. . . .' 'You're my Boy Toy.'" (*Id.* at PageID.74). Plaintiff alleges his request to be moved out of the cell where he was being continuously recorded was a part of his complaint. (*Id.* at PageID.73).

In his June 22, 2021 Request, Plaintiff asks the Court to issue a restraining order against Defendant as she has allegedly directed the guards not to allow Plaintiff to "interact or even talk to other inmates." (ECF No. 11, PageID.82-83). Last, Plaintiff's August 16, 2021 request[3] consists mostly of Plaintiff listing his previous grievances and complaints regarding Defendant's alleged actions of (i)

---

[3] Defendant's September 7, 2021 response in sum argues Plaintiff's August 16, 2021 Request seeks injunctive relief on allegations not raised in the original complaint, which is not permitted, and Plaintiff failed to address any of the four factors considered by the Courts when assessing whether to grant a restraining order. (ECF No. 19, PageID.240-41, 243-49).

6

having the Mental Health Team submit a management plan to remove Plaintiff's property (e.g., his mattress, blankets, clothing, and all legal documents) (ECF No. 18, PageID.233-34); (ii) Plaintiff's prohibition from going outside for the past two years (*id.* at PageID.234-35); and (iii) Defendant's refusal to permit Plaintiff to receive all privileges allowed at WCC as requested by the Mental Health Department (*id.* at PageID.235).

Plaintiff's Requests suffer the same fatal flaw—they each fail to address any of the factors considered by the Court when assessing whether to grant a request for a restraining order. Most importantly, they are all entirely silent on the likelihood of success of his claim on the merits which in and of itself is detrimental to Plaintiff's Requests. As the Requests are silent on the likelihood of success of his claim on the merits, the Court is unable to evaluate this factor and in essence Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims. *Gonzales*, 225 F.3d at 625 ("[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."); *see also Fish and Chicken Land, Inc. v. U.S.*, 2013 WL 1729357, at *1-*2 (E.D. Mich. Apr. 22, 2013). In his motion, Plaintiff proffers no admissible evidence as to why any of the alleged measures currently in place, as outlined in his Requests, are improper. For example, he offers no explanation as to why his current cell, where there is continuous video surveillance, is improper or is a form

7

of retaliation by Defendant. Further, Plaintiff fails to offer evidence from his psychiatrist, in the form of an affidavit, testimony, documents or otherwise, or WCC procedures and policies to underscore the alleged inappropriateness of housing him in these accommodations or the alleged limitations on who he can interact with or where he is permitted to go. Thus, there is no evidence in the record to support the contentions outlined in Plaintiff's Requests. Without a shred of evidence attached to either Plaintiff's Complaint or his Requests, or even the inclusion of a discussion, the Court is not afforded an opportunity to assess the likelihood of success on the merits of Plaintiff's claim that Defendant's alleged actions are in retaliation for the previously filed grievances.

Plaintiff's "position" is further diminished by the principle that prison officials "retain broad discretion over the administration of prisons, including housing in general and cell assignments in particular." *Dunbar v. Caruso*, 2011 WL 3474004, at *5 (E.D. Mich. July 12, 2011) (citing *Quick v. Mann*, 170 F. App'x 588, 590 (10th Cir. 2006)). Given the general deference to prison authorities, it is unlikely any of Plaintiff's complaints regarding his current housing accommodations and limitations would be found to be a form of retaliation.

Accordingly, the undersigned **RECOMMENDS** Plaintiff's Requests for restraining orders (ECF Nos. 8, 11, 18) be **DENIED**.

      B. Plaintiff's June 11 and June 22 Requests Seek Impressible Relief
         <u>Based on the Operative Complaint</u>

Under the law, Plaintiff is not permitted to seek injunctive relief on allegations not raised in the original complaint. *Colvin v. Caruso*, 11 F.3d 282, 300 (6th Cir. 2010). Plaintiff's operative complaint is bereft of any allegations regarding sexual harassment. Further, Plaintiff's Requests allegedly relate to actions undertaken by Defendant after the filing of his April 22, 2021 complaint. Accordingly, for this additional reason, the Court should **DENY** Plaintiff's Requests for restraining orders.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Plaintiff's Requests for restraining orders (ECF Nos. 8, 11, 18) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

9

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 6, 2021

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 6, 2021, by electronic means and/or ordinary mail.

s/Kristen MacKay
Case Manager
(810) 341-7850