UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES MATTHEW WHORTON,<br>Plaintiff, | Case No. 21-11046 |
| v. | Denise Page Hood<br>United States District Judge |
| JODI DEANGELO,<br>Defendant.<br>_____/ | Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 46)**

**I.  BACKGROUND**

Plaintiff James Whorton filed this case without the assistance of counsel on April 22, 2021.  (ECF No. 1).  This case was referred to the undersigned for all pretrial matters.  (ECF No. 10).  On February 6, 2023, Defendant moved for summary judgment.  (ECF No. 46).  Plaintiff has not responded to the motion.  The Court extended his original response deadline to March 30, 2023.  On April 13, 2023, having received no response, the Court ordered Plaintiff to show cause why Defendant's motion should not be granted or the case be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b).  (ECF No. 52).  Plaintiff did not respond to that Order, so the undersigned issued a report and recommendation, recommending that the case be dismissed for failure to prosecute.  (ECF No. 53).  Later that day, an affidavit from Plaintiff was filed.  Plaintiff explained he failed to prepare a

1

response due to his hospitalization, and requested more time. (ECF No. 54). The Court rescinded the recommendation and gave Plaintiff until June 30, 2023, to respond. Plaintiff then moved to extend that deadline, which the Court granted in part, giving him until August 4, 2023. (ECF No. 57). The Court warned that no further extensions would be granted absent extraordinary circumstances. On August 8, 2023, Plaintiff filed an affidavit seeking another 30 days in which to respond based on difficulties working with the prison legal writer. (ECF No. 58).

In a separate Order, the Court denied Plaintiff's request for 30 more days because the legal writer's failure to draft Plaintiff's brief is not an extraordinary circumstance warranting more time. Plaintiff has had since February to draft and file this brief.[1] Defendant is entitled to timely resolution of her motion. Although Plaintiff failed to file a timely response brief to the motion for summary judgment, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998). As explained by another judge in this District,

> Rule 56 requires a court to determine, even where a motion for summary judgment is unopposed, "that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment." *Sutton v. U.S.*, 922 F.2d 841, *2 n. 1

---

[1] This is not the first time in this case that the undersigned issued a report and recommendation without a response from Plaintiff. (*See* ECF No. 28). Plaintiff did not respond to Defendant's motion for summary judgment on the issue about exhaustion of administrative remedies.

2

> (Table) (6th Cir. 1991). When confronted with an unopposed Rule 56 motion, a court must "intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). In conducting this review, a court may rely upon the facts presented by the moving party, reject flagrant evidentiary misstatements, and acknowledge the context from which the evidence was adduced. *See id*. at 404–05.

*Anthony v. Owen*, 2011 WL 4406353, at *1 (E.D. Mich. Sept. 22, 2011).

The undersigned notes that the record includes Plaintiff's deposition testimony related to his claims that will be reviewed below, so Plaintiff's positions are considered here.

For the reasons below, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

**II.    DISCUSSION**

    A.    <u>Governing Standards</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light

3

most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

4

showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

    B.    <u>Analysis</u>

        1.    Factual Background – Plaintiff's Complaint

This factual recitation comes from Plaintiff's complaint. Additional admissible facts from the record are addressed when needed in the analysis.

During the events alleged in the complaint, Plaintiff was housed at Woodland Center Correctional Facility for mental health care. Defendant was the warden at that facility. She is sued in both her individual and official capacities. Four claims remain after a ruling on Plaintiff's failure to exhaust administrative remedies on some of his claims.

Plaintiff alleges that on August 28, 2019, he was placed on top of bed restraints ("TOBR") in an air-conditioned room because of self-harming behaviors. He had a suicide prevention blanket in this room until the blanket was taken away by Defendant. He was cold and did nothing wrong to lose the blanket. He asserts that another prison official was not candid when she said Plaintiff tried to expose his penis under the blanket, and even if he had, he says that does not justify taking the blanket. (ECF No. 1, PageID.6).

He alleges that at the end of September 2019, he was hospitalized for five days related to surgery. While there, Defendant refused to allow removal of "black

box" restraints, which are placed over the handcuffs. The black box restraint made it difficult to move his hands, wrists, and arms. Plaintiff says he received several cuts and bruises from the restraints. (*Id.* at PageID.7-8).

Plaintiff accuses Defendant of taking his mattress and having mitts put on his hands to prevent him from picking anything up. He was without a mattress for ten days, sleeping on the floor with one blanket. This caused him to be stiff and in "extreme pain." (*Id.* at PageID.9).

He alleges that on October 14, 2019, treating psychiatrist Dr. Dinsa took him off restraints, but Defendant refused to sign the management order that would remove them. (*Id.*).

According to Plaintiff, Defendant's conduct amounted to cruel and unusual punishment, First Amendment retaliation, conspiracy, deprivation of "equal privileges and immunities," and violation of 42 U.S.C. §§ 1985 and 1986 and 18 U.S.C. §§ 241, 242. (*Id.* at PageID.3-4).

        2.     Personal Involvement

For three of the four claims, Defendant argues she lacked personal involvement, and thus those three claims must be dismissed. She asserts that it was not her who signed orders to remove his blanket, to put him in black box restraints, or to remove his mattress. (ECF No. 46, PageID.399-400). Plaintiff could not offer how he knew that Defendant took his blanket, other than to say that

she responded to his grievance about the blanket being taken away. (ECF No. 46-3, PageID.436-39). Plaintiff testified that Defendant was responsible for the black box restraints staying on for five days because the restraints were only mandated for first and third shifts and he was never kept in restrains while hospitalized under other wardens. (*Id.* at PageID.441, 442). He stated she was involved in removing his mattress because "only the Warden [by directing an officer] can take your mattress." (*Id.* at PageID.443). On the fourth claim, she agrees that she signed the October 14, 2019, health care management order from Dr. Dinsa, but that Dr. Dinsa did not plan to remove restraints as Plaintiff alleges. (ECF No. 46, PageID.401-02).

In support of her arguments, Defendant cites evidence that she did not sign orders to remove the blanket or mattress, and that the transportation detail for the September hospital stay stated that Plaintiff would have black box restraints, and that detail was authorized by the deputy warden, not herself. (*Id.* at PageID.399-401).

A civil rights claim cannot succeed against a defendant unless the plaintiff proves that the defendant was personally involved in the alleged violation. *Nwaebo v. Hawk–Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (To recover against a given defendant for a claimed constitutional violation, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal

7

rights.") (citing *Rizzo v. Goode*, 423 U.S. 362, 373–77 (1976)). Except for the management order issue, which amounts to a misunderstanding by Plaintiff and is addressed below, Defendant has adequately shown that she was not personally involved in the blanket, black box, and mattress issues.

Even if Defendant had been involved, the claims fail as explained below.

       3.      Cruel and Unusual Punishment

Defendant argues that all four claims should be dismissed because what occurred does not amount to cruel and unusual punishment.

Plaintiff alleges that taking his blanket, keeping him in black box restraints, taking his mattress and placing mitts on his hands, and refusing to sign an order removing restraints amounted to cruel and unusual punishment. "[T]he Eighth Amendment prohibits punishments which, [ ]though not physically barbarous, 'involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation and quotation marks omitted). But "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quotation makes omitted)). While "prison conditions may be uncomfortable without violating the Eighth Amendment's prohibition

against cruel and unusual punishment[,] . . . the Amendment also imposes duties on [prison] officials, who must provide humane conditions of confinement." *Burley v. Miller*, 241 F. Supp. 3d 828, 836 (E.D. Mich. 2017) (internal quotations and citations omitted). The Sixth Circuit says that in considering whether an Eighth Amendment violation has occurred, a court must consider "[t]he circumstances, nature, and duration of a deprivation." *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006).

The first claim is that Plaintiff's blanket was removed after he exposed his genitals, but without justification. The room was air conditioned and he was cold without a blanket. From his complaint it appears he was deprived of the blanket for one day or night. This claim does not amount to cruel and unusual punishment. First, the deprivation was short and he alleges no adverse effects without a blanket other than feeling cold. Though Plaintiff was uncomfortable for the seemingly brief period without a blanket, he did not undergo the unnecessary and wanton infliction of pain that would support an Eighth Amendment violation. *See Hunter v. Williams*, 2013 WL 3467097, at *2 (M.D. Tenn. July 10, 2013) (being placed in suicide watch for two days without blankets, pillows, or clothing except a gown was not an Eighth Amendment violation); *Oliver v. Dep't of Corr.*, 2014 WL 321215, at *4 (W.D. Ky. Jan. 29, 2014) (deprivation of a mat and blanket for 18 hours fails to give rise to a constitutional violation); *Dixon v. Godinez,* 114 F.3d

9

640, 643 (7th Cir.1997) (observing that it is not just the severity of the cold, but the duration of the condition, which determines whether a condition is unconstitutional).

Second, Defendant put forth a penological justification for taking his blanket. An employee was checking Plaintiff's vitals when Plaintiff positioned himself to expose his penis and told the employee "I know you like it. I got your girl yesterday." Further, the Administrative Law Judge says Plaintiff's conduct was supported by surveillance video, thus Plaintiff was found guilty of Class I sexual misconduct. (ECF No. 46-7). The next day, his mental health management plan included the restriction that he would not be allowed a blanket. (ECF No. 46-8). Plaintiff's assertion that exposing his genitals was not justification to take the blanket, (ECF No. 46-3, PageID.436, Plaintiff's Deposition), is unavailing considering the findings of the Class I Misconduct Hearing Report. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). This deference "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley v. Albers,* 475 U.S. 312, 322 (1986). Thus,

"[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Id.* The undersigned suggests that the evidence does not support an inference of wanton infliction of pain, so this claim should be dismissed.

Plaintiff claims that it was cruel and unusual punishment to leave him in black box restraints for five days while at the hospital. He said several cuts and bruises were inflicted from the black box restraints placed over his handcuffs. This claim does not amount to a constitutional violation. An MDOC prison official explains that black box restraints are a shield or box placed around handcuffs to keep prisoners from tampering with the handcuffs.² (ECF No. 46-4, PageID.457). Defendant asserts that Plaintiff required the black box restraints because he had proven before he could injure himself, so the restraints were used to keep him safe from himself.

The discharge summary from the stay at St. Joseph Mercy hospital confirms that the use of the black box restraints was necessary, not excessive punishment. Plaintiff was taken to the hospital on September 26, 2019, after swallowing a paperclip and opening multiple abdominal scars and inserting a paperclip into his small bowel the day before. Plaintiff was given a meal before discharge from that

---

² The "box" is placed over the space between the wrist shackles.

11

surgery but "managed to swallow his plastic fork whole," so he underwent another surgery to remove the fork and was discharged on September 30th. (ECF No. 46-11, PageID.478). While in the black box restraints, Plaintiff caused further harm to his body by swallowing the fork.

On these facts, no reasonable jury could conclude that use of the black box restraints to prevent Plaintiff from removing his handcuffs was cruel and unusual punishment. Plaintiff proved to be a danger to himself if he gained access to objects out of his immediate reach. *See Bean v. Jungling*, 883 D.2d 74 (Table), 1989 WL 94541, at *1 (6th Cir. Aug. 18, 1989) (placing inmate in restraints to restrain destructive behavior does not violate the Constitution); *McLaurin v. Hofbauer*, 12 F.3d 213 (Table), 1993 WL 473694, at *1 (6th Cir. Nov. 15, 1993) (use of black box and other restraints not cruel and unusual punishment where inmate exhibited disruptive behavior). And no jury could conclude that the bruises and scratches he states he obtained from the restraint constitute cruel and unusual punishment. *See Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (pain and swollen wrists resulting from tight handcuffs and striking a food slot are *de minimis* injuries under the Eighth Amendment); *Peterson v. Johnson*, 2011 WL 1627924, at *6 (W.D. Mich. Mar. 28, 2011) ("Minor injuries such as bruises and swelling are generally insufficient to support a claim under the Eighth Amendment's Cruel and Unusual Punishments Clause.").

The next claim is about Plaintiff's mattress being removed without reason and having mitts on his hands to prevent him from picking up any objects, all on October 7, 2019.  During his deposition, he testified that he did not have a mattress for 10-13 days.  (ECF No. 46-3, PageID.433).  The deprivation of a mattress for that period, absent evidence of a physical injury, does not violate the Eighth Amendment.  *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011); *Brown v. Page*, 2021 WL 288754, at *4 (M.D. Tenn. Jan. 27, 2021) (sleeping on a floor mat for 10 days does not violate the Eighth Amendment); *Jones v. Toombs*, 77 F.3d 482 (6th Cir. 1996) (holding that two weeks without a mattress did not violate the Eighth Amendment).  As for the mitts, Defendant points to the October 7, 2019, mental health management plan in which Plaintiff's treating psychiatrist orders that he be placed in "2-pt. ambulatory restraints with mitts" with continuous observation because of the high risk of suicide or self-injury.  (ECF No. 46-16). There is no development of the claim that being placed in mitts amounts to cruel and unusual punishment.  Plaintiff alleged no injury from wearing the mitts.  The minor indignity of wearing the mitts is justified considering the high risk of suicide or self-harm Plaintiff posed to himself.  The undersigned suggests wearing mitts during October 2019 did not violate the Eighth Amendment.

The fourth and final claim is that on October 14, 2019, treating psychiatrist Dr. Dinsa ordered in a care management plan that he no longer have restraints, but

13

Defendant refused to sign the management plan. Defendant argues that Plaintiff misunderstood the management plan. She is correct. The October 14, 2019, management plan was to keep Plaintiff on "2pt Ambulatory Restraints" and in a protective gown with a blanket, among other restrictions. (ECF No. 46-17). There is no indication that this plan was intended to remove restraints. Since Plaintiff misunderstood the plan, this claim should be dismissed.

In sum, the Eighth Amendment claims should be dismissed because none of the alleged instances of cruel and unusual punishment violate the Amendment.

        4.      Retaliation

With each claim discussed above, Plaintiff asserts that Defendant acted in retaliation. To succeed on a retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). There is no evidence establishing any of these elements. Plaintiff's conclusory assertions in his complaint that Defendant retaliated against him are insufficient to allow a jury to conclude in his favor. For instance, there is not even an allegation that Defendant was aware of protected conduct, and because of that protected conduct,

14

took some adverse action against him. Thus, the undersigned suggests that the First Amendment claims be dismissed.

     5.    Conspiracy

Plaintiff listed 42 U.S.C. §§ 1985(3) and 1986 as part of the basis for his lawsuit. He also asserts with each claim that Defendant conspired to act as she allegedly did. Defendant argues a conspiracy claim fails, if she is found to have been personally involved in the conduct, because she is the only defendant and cannot conspire with herself, and because even if she worked with other MDOC employees, because they are all MDOC employees and part of the same entity, there are not two separate people to form a conspiracy. (ECF No. 46, PageID.409-10).

The undersigned suggests a different reason why the conspiracy claim fails: Plaintiff did not allege, nor is there any evidence of, a conspiracy *motivated by racial or other class-based animus*.[3] Plaintiff's § 1985(3) claim necessarily fails because he has not alleged that any conspiracy deprived him of the "equal protection of the laws" or the "equal privileges and immunities under the laws[.]"

---

[3] Because Plaintiff is a prisoner-litigant, his claim are subject to screening and dismissal of claims that are frivolous or fail to state a claim under 42 U.S.C. § 1997e. Because of this, the undersigned can suggest a reason why a claim should be dismissed that Defendant did not argue. In screening a claim, the Court considers the same analysis as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)—whether the facts, taken as true, state a plausible claim to relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

42 U.S.C. § 1985(3). "To avoid turning § 1985(3) into a generic tort law covering any injury inflicted by two parties, the Supreme Court has interpreted these two phrases to require 'some racial, or perhaps otherwise *class-based*, invidiously discriminatory animus behind the conspirators' action." *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added in *Post*).

"Section 1986 is designed to punish those who aid and abet violations of s 1985." *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980). Without a finding of a violation of § 1985, there can be no violation of § 1986.

6. 18 U.S.C. §§ 241-242

Plaintiff listed violation of 18 U.S.C. §§ 241-242 among the laws Defendant allegedly violated. These claims should be dismissed because a private citizen has no private right of action to pursue a claim under these sections. *Flood v. Reed*, 2017 WL 1021364, at *4 (S.D. Ohio Mar. 16, 2017) (collecting cases).

7. Equal protection

Plaintiff asserted that Defendant deprived him of "equal privileges and immunities" under the Constitution. Defendant construed this statement as alleging a violation of equal protection under the Fourteenth Amendment. This is

a reasonable interpretation.[4] "The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by the government that 'burdens a fundamental right, targets a suspect class, or intentionally treats one differentially than others similarly situated without any rational basis for the difference.'" *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 971 (E.D. Mich. Mar. 30, 2016). The threshold element of an equal protection claim is disparate treatment. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Plaintiff has not alleged in his complaint that he was treated disparately. As a result, the undersigned suggests that Defendant is entitled to judgment as a matter of law on this claim.

      8.     Official Capacity

Plaintiff purports to sue Defendant in both her official and individual capacities. The individual capacity claims should be dismissed as recommended above. Defendant should be dismissed in her official capacity for the reasons below. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*,

---

[4] It is doubtful Plaintiff truly intended to raise a Fourteenth Amendment Privileges and Immunities Clause claim. That clause states that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." U.S. CONST. art. IV, § 2. "The purpose of the clause is to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Green v. Smith*, 2000 WL 1279165, at *3 (E.D. Mich. Aug. 15, 2000). This is not the kind of claim in Plaintiff's complaint.

436 U.S. 658, 691 n.55 (1978)). When state officials, like Defendant, are sued in their official capacities for monetary damages, they are not "persons" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). State officials sued in their official capacities for damages are also absolutely immune from § 1983 liability under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. at 169 ("Th[e] Eleventh Amendment bar remains in effect when State officials are sued for damages in their official capacity.").

Defendant is employed by the MDOC—a state agency. Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Thus, Defendant is immune from official capacity claims, and they should be dismissed.[5]

## III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment (ECF No. 46) be **GRANTED** and that the case be **DISMISSED**.

---

[5] The Eleventh Amendment does not preclude prospective injunctive relief claims against a state. *McCormick v. Miami Univ.*, 696 F.3d 654, 662 (6th Cir. 2012). Plaintiff seeks monetary relief and an injunction "enjoining Defendant from further retaliation, harassment, and discrimination relating to the matters violating Plaintiff's rights." (ECF No. 1, PageID.11). a blanket order for a defendant to not violate the law is not a cognizable request for prospective injunctive relief. (Affirming denial of injunctive relief when the plaintiff lodged "an overbroad, blanket injunction enjoining the State of Ohio and the ODRC from violating prisoners' constitutional rights. . . . A blanket statement disapproving of violations of prisoners' Eighth and Fourteenth Amendment rights is cumulative of the Amendments themselves and unnecessary." *Coleman v. Dep't of Rehab. & Corr.*, 46 F. App'x 765, 772 (6th Cir. 2002).

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2023                    s/Curtis Ivy, Jr./s
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

    The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on August 15, 2023.

                                         s/Kristen MacKay
                                         Case Manager
                                         (810) 341-7850